IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| VOLVO GROUP NORTH AMERICA, LLC<br>d/b/a VOLVO TRUCKS NORTH<br>AMERICA, *et al.*, | )<br>)<br>)<br>) | |
| Plaintiff, | )<br>) | |
| v. | )<br>) | Civil Action No. 7:16-cv-00025 |
| TRUCK ENTERPRISES, INC., *et al.*, | )<br>) | By: Elizabeth K. Dillon<br>United States District Judge |
| Defendants. | )<br>)<br>) | |

**MEMORANDUM OPINION**

By order dated April 13, 2016, the court granted in part and denied in part plaintiff Volvo Group North America, LLC's motion for a preliminary injunction. It now provides the reasons for that decision.

I. BACKGROUND

This case arises from the proposed sale of a group of mid-Atlantic commercial-truck dealerships. Defendants Truck Enterprises, Inc., James E. Hartman, Truck Enterprises Roanoke, Inc., Truck Enterprises Lynchburg, Inc., and Truck Enterprises Hagerstown, Inc. (collectively, Dealers) own and operate seven commercial-truck dealerships across three states—Maryland, Virginia, and West Virginia. Four of the dealerships sell both Volvo and Kenworth trucks, and two of them sell both Kenworth and Isuzu trucks. The remaining dealership offers only Kenworth trucks. The dealerships that sell two brands are known as "dualed dealerships" in the commercial-truck business.

Dealers now wish to sell all of the dealerships to Transportation Equipment Company, Inc. (TEC) in a package deal. To that end, Dealers and TEC entered into a stock purchase agreement on December 18, 2015.[1] The agreement does not provide a valuation of any one dealership or of any one dealership's assets. Rather, it provides only the total purchase price for all of the outstanding shares of the dealerships. The sale is currently scheduled to close on June 1, 2016.

Volvo does not want the deal to go forward. Instead, if the price is right, Volvo desires to exercise its contractual and statutory rights of first refusal and purchase just the Volvo portions of the dualed dealerships. Dealers do not dispute that Volvo has rights of first refusal under the parties' dealer agreements and Virginia law. Instead, Dealers insist that if Volvo decides to exercise those rights, then under Virginia law, it must stand in the shoes of TEC and buy all of the dealerships—not just the Volvo portions of the dualed dealerships—for at least the total purchase price set forth in the stock purchase agreement.

Volvo disagrees with Dealers' assessment of Virginia law and therefore filed this suit against Dealers on January 26, 2016. In its verified complaint, Volvo claims that Dealers breached their dealer agreements and violated Virginia law by entering into the stock purchase agreement with TEC.[2] Volvo alleges that the agreement impairs or frustrates its contractual and statutory rights of first refusal because it does not segregate the Volvo portions of the dualed dealerships from the other portions, and because it does not provide a separate valuation of the

---

[1] Technically, only two of the defendants (Truck Enterprises and Hartman) are parties to the stock purchase agreement with TEC. So the court's use of the term "Dealers" in this memorandum opinion may not be 100% accurate at times, but it simplifies things. The parties likewise sacrifice accuracy for simplicity in many of their filings. (*See, e.g.*, Compl. ¶ 13, Dkt. No. 1 ("Defendants entered into a Stock Purchase Agreement, dated December 18, 2015, with non-party Transport Equipment Company, Inc. . . .").)

[2] Volvo also alleges that Dealers violated Maryland and West Virginia law, but Volvo and Dealers agree that neither of those states imposes a deadline on a manufacturer's exercise of a right of first refusal. For purposes of Volvo's preliminary injunction motion, then, the court need consider only Virginia law.

Volvo portions. Consequently, Volvo asserts, Dealers have placed it "in the untenable position of choosing between: (A) waiving its valuable contractual and statutory rights of refusal . . . and accepting TEC, the proposed buyer, as its Volvo dealer in place of [Dealers]; or (B) exercising the rights of first refusal on [Dealers'] terms whereby Volvo buys not just the Volvo business but also [Dealers'] Kenworth and Isuzu businesses[,] which Volvo has no contractual or statutory authority to do." (Compl. ¶ 75, Dkt. No. 1.)

Volvo seeks a declaration of its and Dealers' rights and obligations under their dealer agreements and Virginia law, including that Volvo "is entitled to know the price that [it] is to pay for [Dealers'] Volvo business and what assets or interests that Volvo is to acquire" (*id.* ¶ A(4), at 23); that "Volvo has no contractual or statutory right of first refusal over [Dealers'] Kenworth and Isuzu businesses" (*id.* ¶ A(7), at 23); and that Dealers "cannot require, by contract or statute, that Volvo purchase or otherwise acquire rights to [Dealers'] Kenworth and Isuzu businesses" (*id.* ¶ A(8), at 23). Volvo also requests "[i]njunctive relief requiring [Dealers] to provide [it] with the terms of the sale that are specific to [their] Volvo business . . . , so [it] may receive proper notice . . . and have sufficiently clear information to determine whether to exercise its right[s] of first refusal." (*Id.* ¶ C, at 24.)

Together with its complaint, Volvo filed this motion for a preliminary injunction, pursuant to Federal Rule of Civil Procedure 65.[3] It asks the court to stop Dealers from going through with the proposed sale of the dealerships until the scope of Volvo's rights of first refusal is determined and to require Dealers to provide Volvo with the terms of the sale that are specific

---

[3] Volvo's motion is styled as a motion for a temporary restraining order and preliminary injunctive relief. The court, however, treats the motion only as a motion for a preliminary injunction because Dealers received sufficient notice of the motion and have had a "fair opportunity to oppose it." *U.S. Dep't of Labor v. Wolf Run Mining Co.*, 452 F.3d 275, 283 (4th Cir. 2006); *see also* Fed. R. Civ. P. 65(a). Further, at the first hearing on the motion, the court informed Volvo and Dealers that it would be treating the motion as just a motion for a preliminary injunction because they were all present and represented by counsel; no party objected. (Prelim. Inj. Hr'g Tr. 3:13–17, Feb. 2, 2016, Dkt. No. 26.)

3

to the Volvo portions of the dualed dealerships. The court held two hearings on the motion. The first occurred on February 2. At the conclusion of that hearing, the court took the motion under advisement, and Volvo and Dealers agreed to extend all contractual and statutory deadlines relating to Volvo's rights of first refusal and to mediate their dispute concerning the proposed sale of the dealerships. After the mediation proved unsuccessful, the court held another hearing on March 30. Kenworth, which has intervened as a plaintiff, participated in that hearing along with Volvo and Dealers.[4] Kenworth does not object to Dealers' selling the dealerships to TEC. But Kenworth does object to Dealers' selling the dealerships to Volvo, as Dealers propose in the alternative.

In accordance with Volvo and Dealers' stipulation, the periods for Volvo to exercise its contractual and statutory rights of first refusal restarted on March 2. Volvo has 60 days to exercise its contractual right of first refusal, and 45 days to exercise its statutory right of first refusal. Given that these periods were set to expire in the coming days, the court expedited its ruling on Volvo's motion for a preliminary injunction and entered an order on April 13, granting the motion in part and denying it in part. Specifically, the court granted the motion as to Volvo's request to suspend the periods for Volvo to exercise its contractual and statutory rights of first refusal and to stay the proposed sale of the dealerships, but denied the motion as to Volvo's request that Dealers provide the terms of sale that are specific to the Volvo portions of the dualed dealerships.

The court now explains its decision.

---

[4] Unlike Kenworth, Isuzu has made no appearance in the case, so its position on the proposed sale of the dealerships is unknown.

II.  DISCUSSION

A. **Preliminary Injunction Standard**

"A preliminary injunction is an extraordinary remedy, to be granted only if the moving party clearly establishes entitlement to the relief sought." *Manning v. Hunt*, 119 F.3d 254, 263 (4th Cir. 1997) (internal quotation marks and alteration omitted).  The moving party must show (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest.  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  All four of these requirements must be met for the movant to obtain preliminary injunctive relief.  *Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342, 345–46 (4th Cir. 2009), *vacated on other grounds*, 559 U.S. 1089 (2010).

Volvo requests both prohibitory and mandatory preliminary injunctive relief.  In particular, it asks that Dealers be stopped from selling the dealerships until the scope of Volvo's and Dealers' rights and obligations are determined and that Dealers be required to provide Volvo with information regarding the value of just the Volvo portions of the dualed dealerships.  The court addresses these requests separately.

B. **Volvo is entitled to prohibitory preliminary injunctive relief.**

  1. *Success on the Merits*

To be entitled to a preliminary injunction, Volvo must first establish that it is likely to win on the merits of its claims.  *Winter*, 555 U.S. at 20.  Based on the alleged facts and the evidence submitted by agreement at the hearings, the court believes that Volvo satisfies this requirement.

Volvo's and Dealers' rights and obligations are governed in part by their dealer agreements and in part by state statutes. As noted above, Volvo alleges that, by entering into the stock purchase agreement with TEC, Dealers have impaired or frustrated Volvo's contractual and statutory rights of first refusal. Hence, it is necessary to review both the dealer agreements and the relevant state statutes to determine whether Volvo is likely to succeed on the merits of its claims.

Volvo, through its Volvo Dealer Sales and Service Agreements, granted a franchise to Dealers to operate as independent, authorized retail dealers of Volvo products within their respective geographical areas. (Compl. ¶ 23; *id.*, Exs. 1–4.) Article 9 of those agreements governs Volvo's and Dealers' rights and obligations in the event of a "Dealership Transfer," which would include the proposed sale at issue here. Under that article, Volvo is entitled to a right of first refusal, which it may exercise if and when Dealers accept any "bona fide Dealership Transfer offer." (Compl., Exs. 1–4, Arts. 9.1–9.3.) Once Dealers provide the bona fide offer with all material terms and conditions to Volvo, it has 60 days to exercise its right of first refusal. (*Id.*, Arts. 9.3.1.)

Volvo also claims a statutory right of first refusal under Virginia Code § 46.2-1569.1, which states that, "[n]otwithstanding the terms of any franchise agreement, in the event of a proposed sale or transfer of a dealership," a manufacturer has a right of first refusal which it must exercise within 45 days after receiving the sale proposal. In relevant part, § 46.2-1569.1 reads:

> **Manufacturer or distributor right of first refusal.**
>
> Notwithstanding the terms of any franchise agreement, in the event of a proposed sale or transfer of a dealership, the manufacturer or distributor shall be permitted to exercise a right of first refusal to acquire the new vehicle dealer's assets or ownership, if such sale or transfer is conditioned upon the manufacturer's or dealer's entering into a dealer agreement with the proposed new owner or transferee, only if all the following requirements are met:

6

> 1. To exercise its right of first refusal, the manufacturer or distributor must notify the dealer in writing *within 45 days of its receipt of the completed proposal for the proposed sale or transfer*;
>
> 2. The exercise of the right of first refusal will result in the dealer's and dealer's owner's receiving the same or greater consideration as they have contracted to receive in connection with the proposed change of ownership or transfer;
>
> . . . .
>
> 4. The manufacturer or distributor agrees to pay the reasonable expenses, including attorney's fees which do not exceed the usual, customary, and reasonable fees charged for similar work done for other clients, incurred by the proposed new owner and transferee prior to the manufacturer's or distributor's exercise of its right of first refusal in negotiating and implementing the contract for the proposed sale or transfer of the dealership or dealership assets. . . .

Va. Code § 46.2-1569.1 (emphasis added).

Where, as here, a dealer operates a dealership that sells more than one manufacturer's products (i.e., a dualed dealership), § 46.2-1569.1 is silent as to how the right of first refusal should work. And unfortunately, the lone case discussing § 46.2-1569.1 does not address the issue, either. *See Priority Auto Grp., Inc. v. Ford Motor Co.*, 757 F.3d 137, 143, 144 (4th Cir. 2014) (holding that a prospective buyer of a dealership was without standing and that franchisor did not tortiously interfere with proposed sale by exercising its right of first refusal).

Volvo and Dealers agree that all three manufacturers involved here—Volvo, Kenworth, and Isuzu—have a statutory right of first refusal under § 46.2-1569.1. Dealers suggest that the manufacturer that first notifies them of its decision to exercise its right of first refusal may then purchase the whole package for the total purchase price set forth in the stock purchase agreement. Volvo disagrees. It contends that where, as here, a dualed dealership is involved, each manufacturer has a right of first refusal over only the specific portion of the dealership selling the manufacturer's particular products. In sum, the primary dispute between Volvo and

7

Dealers is whether Volvo must take the place of TEC and buy all of the dealerships for the same or greater consideration in the stock purchase agreement, or whether Volvo may instead exercise its right over only the Volvo portions of the dualed dealerships at some fraction of the total purchase price.

Volvo and Dealers have not cited any Virginia or Fourth Circuit cases addressing this issue in the context of car dealerships. But Volvo cites a decision from the Supreme Court of Virginia addressing the effect of a package deal on a right of first refusal in the real estate context. In *Landa v. Century 21 Simmons & Co., Inc.*, the Landas had a right of first refusal to purchase a 17-acre tract of land. 377 S.E.2d 416, 421 (Va. 1989). The landowner contracted with another party to sell the 17-acre tract, along with another 1.9-acre parcel. *Id.* The court was not persuaded by the landowner's argument that the packaged nature of the proposed sale defeated the right of first refusal. *Id.* Rather, the court concluded that specific performance in favor of the Landas was appropriate.[5] *Id.* at 422.

In its decision, the *Landa* court cited with approval *Pantry Pride Enterprises v. Stop & Shop Companies*, 630 F. Supp. 637 (E.D. Va.), *aff'd in part, vacated and remanded in part*, 806 F.2d 1227 (4th Cir. 1986).[6] 377 S.E.2d at 421. The district court in *Pantry Pride* held that a package deal to assign a lease and sell equipment could not defeat the right of first refusal that Stop & Shop had with regard to the lease. 630 F. Supp. at 639–40. Pantry Pride argued that Stop & Shop could exercise its right of first refusal only with regard to the lease if it purchased

---

[5] It is also worth noting that the *Landa* was the law in 1994, when § 46.2-1569.1 was enacted. "'When the legislature . . . pass[es] a new law or . . . amend[s] an old one, it is presumed to act with full knowledge of the law as it stands bearing upon the subject with which it proposes to deal.'" *Powers v. Cnty. Sch. Bd.*, 139 S.E. 262, 264 (Va. 1927) (quoting *School Bd. v. Patterson,* 69 S.E. 337, 339 (Va. 1910)). The Virginia legislature here passed a statute dealing with rights of first refusal and is thus presumed to act with knowledge of the *Landa* case. Had it wanted to provide for a contrary rule, it could have done so.

[6] The case was vacated and remanded with regard to a valuation issue that is not relevant here.

the whole package—the lease and the equipment. *Id.* at 639. In rejecting that contention, the district court explained: "It is universally recognized that the holder of a right of first refusal cannot be compelled to purchase more property than is subject to the right of first refusal, or else forfeit its first refusal rights." *Id.* (citations omitted). The Fourth Circuit affirmed on this issue, reasoning that, to hold otherwise "could effectively nullify the right of first refusal by combining the lease with items that Stop & Shop may not want or cannot afford." *Pantry Pride,* 806 F.2d at 1229. Moreover, Pantry Pride "could have 'foreseen the commercial need to combine' the lease and equipment in a single sale and could have insisted that the equipment be included 'in the right of first refusal.'" *Id*. (quoting *Radio WEBS, Inc. v. Tele-Media Corp.*, 292 S.E.2d 712, 715 (Ga. 1982)).

Although the factual context of these cases was different, the court sees no reason that their reasoning should not apply here. Indeed, the reasoning of the Fourth Circuit in *Pantry Pride* resonates here, although in converse. There, the court chastised the parties for not considering that the assets might need to be included in the right of first refusal; here, the parties appear to have specifically contemplated that only Volvo assets would be involved in any right of first refusal. Specifically, the Dealership Agreements provide that an bona fide offer giving rise to the right of first refusal may not contain "proposed sale terms that are co-mingled with other assets" of the dealer. (Compl., Exs. 1–4, Arts. 9.3.1.)

Further, the same result was obtained in the context of dualed car dealerships in *Mercedes-Benz USA, LLC v. Star Auto. Co.*, No. 3:11-cv-73, 2011 U.S. Dist. LEXIS 59258, at *4 (M.D. Ga. June 3, 2011). There, a dealer sought to sell dealerships of three different brands—Mercedes-Benz, Nissan, and Volkswagen—together as a package deal. Mercedes-Benz thought such a sale violated its statutory and contractual rights of first refusal and so it sued to

9

stop the sale from going forward. *Id.* at *1–3. In that case, the court granted the plaintiff's motion for preliminary injunction, concluding that "the package deal" likely "violated Mercedes-Benz's contractual right of first refusal." *Id.* at *7. This case, too, supports the court's conclusion.

Accordingly, the court concludes that Volvo has shown a likelihood of success on the merits.

### 2. *Irreparable Harm*

Next, Volvo must show that it will likely suffer irreparable harm in the absence of a preliminary injunction. *Winter*, 555 U.S. at 20. The court believes that Volvo also satisfies this requirement.

If Dealers are allowed to go through with the proposed sale of the dealerships to TEC at this time, then Volvo will either lose its rights of first refusal or be forced to purchase not only the Volvo portion, but also the Kenworth and Isuzu portions, which, as explained above, Volvo does not appear to have any contractual or statutory right to do. Either way, it is likely that Volvo would be irreparably harmed because it would be compelled to accept a dealer with which it has had no relationship (TEC) or to purchase portions of the dealerships (Kenworth and Isuzu) over which it has no right. Assuming that monetary damages could remedy these harms, it is difficult to see how the appropriate figure could be calculated, given that one harm would likely go well into the future (i.e., a continuing relationship with TEC) and the other would likely give rise to subsequent legal action (i.e., a suit from Kenworth or Isuzu or both).

The district court in *Mercedes-Benz USA* was of a similar mind. 2011 U.S. Dist. LEXIS 59258, at *6. It found that the package deal in that case would cause irreparable harm to Mercedes-Benz, explaining: "If the Court were to allow the sale of [dealer's] Mercedes

dealership to close, [Mercedes-Benz] would lose its right of first refusal under the Dealer Agreements. Under such circumstances, monetary damages would be difficult, if not almost impossible, to calculate." *Id.*

### 3. Balance of the Equities

Volvo must also demonstrate that the balance of the equities tips in its favor. *Winter*, 555 U.S. at 20. The court concludes that Volvo meets this requirement, too.

If Dealers were permitted to go forward with the proposed sale of the dealerships to TEC at this time, then Volvo would likely face irreparable harm, as described above. If the sale were delayed by an injunction, however, it is unlikely that Dealers would face any such harm because, as the district court in *Mercedes-Benz USA* reasoned, they would "continue[] to benefit from the ownership and operation of the dealership[s]." 2011 U.S. Dist. LEXIS 59258, at *7. Further, if Volvo prevails and does exercise its rights of first refusal, then it will be required to pay the same or more for the Volvo portion of the dealerships than TEC has agreed to pay and to reimburse Dealers and TEC for the money that they spent in negotiating the deal.

Of course, there is a chance that if the sale were delayed, then TEC would walk away from the deal. While there is no evidence that this would in fact occur,[7] even if it did, the court still thinks that the equities weigh in favor of Volvo because, as discussed above, Dealers likely breached their dealer agreements with Volvo and violated Virginia law by negotiating such a deal in the first place.

### 4. Public Interest

Lastly, Volvo must establish that a preliminary injunction is in the public interest. *Winter*, 555 U.S. at 20. The court concludes that Volvo also satisfies this requirement.

---

[7] Dealers did represent that TEC is not interested in pursuing the deal without the Volvo portions of the dualed dealerships, but the effect of a delay was not addressed.

11

Enjoining Dealers from going through with the sale until Volvo has had a chance to exercise its rights of first refusal would benefit the public because it has an interest in seeing contractual and statutory rights and obligations enforced. *See Mercedes-Benz USA*, 2011 U.S. Dist. LEXIS 59258, at *7.

* * *

Because Volvo meets each of the four requirements for prohibitory preliminary injunctive relief, the court believes that it is entitled to such relief. It has thus suspended the periods for Volvo to exercise its contractual and statutory rights of first refusal and stayed the proposed sale of the dealerships until further order. This relief goes no further than what is necessary "to protect the status quo and to prevent irreparable harm during the pendency of [the case and] to preserve the court's ability to render a meaningful judgment on the merits." *In re Microsoft Corp. Antitrust Litig.,* 333 F.3d 517, 525 (4th Cir. 2003).

**C. Volvo is not entitled to mandatory preliminary injunctive relief.**

Volvo also seeks a mandatory injunction that requires Dealers to provide value information for the Volvo portion of the stock purchase agreement. A mandatory injunction disturbs the status quo ante, which "in any circumstance is disfavored." *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 235 (citation omitted). The court denies this portion of the relief sought at this time because Volvo cannot establish a likelihood of irreparable harm absent an injunction, as opposed to the "possibility of some remote future injury." *Winter*, 555 U.S. at 22. Because the court has now enjoined the sale pending the outcome of this litigation, and stayed Volvo's statutory and contractual deadlines, there is no risk that the sale will go forward and deprive Volvo of its rights of first refusal. Accordingly, it is not necessary at this time to require Dealers to provide a valuation of only the Volvo portion of the total purchase

12

price set forth in the stock purchase agreement in order to prevent any irreparable harm. Instead, if the court ultimately concludes—after a determination on the merits—that it is appropriate to require Dealers to provide that information, then it can so order at that time. In the meantime, Volvo will not suffer any harm from not receiving that information.

**D. Volvo must post a security bond.**

Under Rule 65(c), a court may issue a preliminary injunction "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." The party to be enjoined bears the burden of establishing the appropriate bond because he is in the best position to determine the harm he will suffer from a wrongful injunction. *Lab. Corp. of Am. Holdings v. Kearns*, 84 F. Supp. 3d 447, 466 (M.D.N.C. 2015). The "court retains the discretion to set the bond amount as it sees fit or waive the security requirement." *Pashby v. Delia*, 709 F.3d 307, 332 (4th Cir. 2013).

Here, the court has ordered Volvo to post a bond of $100,000. It believes that this amount is sufficient to cover whatever losses Dealers may suffer during the pendency of the injunction. *See Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 n.3 (4th Cir. 1999) ("The judge usually will fix security in an amount that covers the potential incidental and consequential costs as well as either the losses the unjustly enjoined or restrained party will suffer during the period he is prohibited from engaging in certain activities . . . ." (citation omitted)). The proposed sale is presently scheduled to close on June 1. The court does not think that the injunction will be in place for many weeks after that date. It has already scheduled a hearing on June 27 for the parties' anticipated summary judgment motions, and it expects to make a ruling on those motions soon afterward.

Though Dealers requested a bond of double the total purchase price (which the court deems punitive), they produced no evidence showing that a few months' delay in the proposed sale of the dealerships would result in a loss approaching anything near such an exorbitant amount. Volvo suggested that Dealers might incur additional expense in the amount of $50,000 to $75,000. Dealers only response was that their losses would be more, but they offered no evidence as to how much more. Rather, they merely represented that they will lose the deal if Volvo eventually prevails on the merits.

Moreover, the injunction does not place any restrictions on Dealers' operation of the dealerships. Dealers are therefore able to continue to run the dealerships as they do now during the pendency of the injunction.

## IV. CONCLUSION

For the foregoing reasons, the court granted in part and denied in part Volvo's motion for a preliminary injunction, and required Volvo to post a $100,000 bond.

Entered: April 14, 2016.

/s/ *Elizabeth K. Dillon*

Elizabeth K. Dillon
United States District Judge